UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL DAVID LIZER,<br>　　　　　Plaintiff,<br>　v.<br>NANCY A. BERRYHILL,<br>　　　　　Defendant. | Case No.17-cv-06780-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 18, 25 |

Plaintiff Samuel David Lizar filed applications for Title II disabled adult child disability benefits and for Title XVI supplemental social security benefits based on the medical impairments of anxiety, Asperger's syndrome, obsessive compulsive disorder, and depression. (Administrative Record ("AR") 216 & 225.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") granting in part and denying in part his benefits claim. The parties' cross-motions for summary judgment are now pending before the Court.[1] (Dkt. Nos. 18 & 25.) Because the Administrative Law Judge's decision that Plaintiff was not disabled prior to November 23, 2010, but was disabled as of September 12, 2013, was arbitrary and not supported by substantial evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for an award of benefits.

**LEGAL STANDARD**

To qualify for Title II disabled adult child benefits disability onset must be established prior to age 22. 42 U.S.C. § 402(d). A claimant is considered "disabled" under the Social

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 12.)

1  Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an Administrative Law Judge ("ALJ") is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a) ).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Id. In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*.

1    A court "must consider the entire record as a whole, weighing both the evidence that
2  supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm
3  simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d
4  664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In August 2013, Plaintiff filed an application for disabled adult child insurance benefits. (AR 226.) A month later, he filed an application for supplemental security income. (AR 216.) In both applications, he listed his disability onset date as November 23, 1988—his date of birth. (AR 216, 226.) His applications were denied initially and on reconsideration. (AR 21.) Plaintiff then filed a request for a hearing before an ALJ. (*Id*.) On May 9, 2016, a hearing was held before ALJ Daniel Heely in Stockton, California during which both Plaintiff, his sister, and Vocational Expert Joy Yoshioka testified. (AR 45.) Plaintiff was represented by the same counsel as he is represented by here. (*Id*.) On June 9, 2016, the ALJ issued a "fully favorable" decision granting his application for supplemental security income and finding that he was disabled as of September 12, 2013, the date he filed his application for supplemental security income. (Dkt. No. 31.) When Plaintiff's counsel raised the issue of Plaintiff's application for disabled adult child insurance benefits which was also pending, the ALJ issued a new "partially favorable decision" on July 12, 2016 which denied his application for disabled adult child insurance benefits, but again granted his application for supplemental security income. (AR 17.) The Appeals Council later denied Plaintiff's request for review and this appeal followed. (AR 1; Dkt. No. 1.)

**DISCUSSION**

**A.    The ALJ's Decision is Arbitrary**

The sole issue raised in Plaintiff's appeal is his disability onset date. While both Plaintiff's applications for benefits list his disability onset date as his date of birth, the ALJ found that although he was disabled at the age of 23, he was not disabled before that date. According to the ALJ, "[t]he evidence failed to establish significant functional limitations prior to November 23, 2010, the claimant's 22nd birthday, but did establish he was disabled as of September 12, 2013, the date the application for supplemental security income was filed." (AR 21.) The ALJ based his

non-disability finding on Plaintiff's "absence of regular treatment" prior to 2010 and "improvement in 2005 and 2010." (AR 25.) The ALJ's decision is not supported by substantial evidence.

First, and most strikingly, the ALJ relied on the *same* evidence for the finding of disability as he did for the finding of non-disability. In particular, the ALJ relied upon a November 25, 2013 report from Plaintiff's treating psychologist, Dr. Janice DeCovnick, whose relationship with Plaintiff began in 2000 (when he was 12 years old) to find that Plaintiff could not manage gainful employment on a regular and continuing basis due to his "anxiety, somatization, autism spectrum disorder, OCD, depression, social phobia, and need for constant supervision." (AR 27, 29 (citing Exhibit 4F 1-9 (AR 551-558).) In reaching this conclusion, the ALJ discussed at length Dr. DeCovnick's findings that:

- Plaintiff had had "anxiety, thinking [] and learning problems since 1st grade, social isolation in the 4th and 5th grade, and severe emotional difficulties since age 11, all leading to a breakdown in middle school." (AR 26.)
- In 2000, Plaintiff suffered "major depression with psychotic features and obsessive compulsive disorder with extreme difficulty concentrating, anxiety, frustration, belligerence, and fidgetiness." (*Id*.)
- In 2005, he had problems with conceptional reasoning, spatial planning and reasoning, fluency of thought, deductive reasoning, problem solving, cognitive processing speed, and integrating information. (AR 26-27.)
- He continued to have "severe anxiety about working and extreme difficulty socializing with others." (AR 27.)
- Plaintiff's diagnosis of Asperger's disorder, social phobia, obsessive compulsive disorder, and recurrent and severe major depressive disorder. (*Id*.)
- "Plaintiff had poor ability to perform complex instructions, maintain attention and concentration, perform activities within a schedule and maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically bases [sic] symptoms, interact with others, and respond appropriately to changes in the work setting." (*Id*.)

The ALJ, however, ignored all this evidence when it came to the portion of his decision finding that Plaintiff was not disabled prior to 2010—although much of this evidence concerns *the pre-2010* time-period. Instead, the ALJ cited to the attachments to Dr. DeCovnick's 2013 report which include an evaluation prepared following Dr. DeCovnick's examinations of Plaintiff on

4

October 14, 21, and November 11, 2005. (AR 24-25 (citing Exhibit 4F 9, 12, 14, 15, 20 (AR 551-576)).) Dr. DeCovnick's 2013 report attached these earlier evaluations because they "are highly relevant to this case" noting that "Mr. Lizer has been suffering severe emotional difficulties since he was 11 years old." (AR 551.) The ALJ then culled one line out of Dr. DeCovnick's 12-page 2005 evaluation to support his conclusion that as of 2005 Plaintiff was "less anxious, and less depressed than previously." (AR 25 (citing 4F 12 (AR 562).) However, in doing so, the ALJ ignored the numerous issues identified in this same 2005 evaluation: "Sam has extensive difficulties with problem solving" (AR 566); "Sam scored on the low end of the low average range for several verbal executive functions" (AR 567); "Sam's cognitive fluency scores were all below average to very poor" (*Id.*); "slow motor speed, which was in the very low to deficient range" (*Id.*); "very poor accuracy" (AR 568); "he cannot apply what he has learned one day to the next day's problems" (*Id.*); and "difficulties with conceptual thinking" (AR 569).

The ALJ erred in relying only on the evidence which supports his disability determination, while ignoring the medical evidence which contradicts it. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries ... and ignored the many others that indicated continued, severe impairment"); *Williams v. Colvin*, No. ED CV 14–2146–PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Second, although the ALJ fully credited and gave substantial weight to Dr. DeCovnick's opinion, the ALJ ignored Dr. DeCovnick's finding in his 2013 report regarding Plaintiff's status in 2010 and earlier. (AR 27.) In particular, Dr. DeCovnick noted that following Plaintiff's graduation from high school, "he took a two year break from school, during which time he was 'just hanging out at home.'" (AR 552.) Further, while Plaintiff attended community college for a year in 2009-2010, he was unable to afford to attend school beyond that year, and the plan was for Plaintiff to get a job in 2010, but he "had and continues to the present day to have severe and

5

extreme anxieties about entering the work world. He is too frightened to fill out job applications and interview for jobs." (AR 552-53.) Indeed, Dr. DeCovnick noted that Plaintiff's therapist "worked with him diligently to get him ready for the work world over the past three years but to no avail." (*Id.*) The ALJ, however, did not mention *any* of this in his opinion. Rather, the ALJ found that Plaintiff had showed "improvement in 2005 and 2010" such that "the evidence does not support even mild limitation in activities of daily living, social functioning, or concentration, persistence, or pace and does not establish he suffered any episodes of decompensation"—during the same period that Dr. DeCovnick reported that Plaintiff was unable to work and suffering from extreme anxiety. (AR 25.) The ALJ's findings in this regard are illogical, unsupported by the record, and contrary to the opinion of Plaintiff's treating physician whose opinion the ALJ fully credited. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015); *Holohan*, 246 F.3d at 1202 ("An ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record.").

Finally, the ALJ cites to two "Progress Notes" in support of his conclusion that in September 2010, Plaintiff had no depression, anxiety, sleep problems, or issues with low energy. (AR 25 (citing 2F 26, 31, 32).) However, these "Progress Notes" appear to be check-box forms which Plaintiff completed when visiting his primary care physician during an unspecified period of time. (AR 457-545.) Further, the notes are inconsistent with respect to Plaintiff's responses; for example, while some indicate that he does not have weakness, fatigue or low energy level, others indicate that he does. (*Compare* AR 487-88 *with* AR 501.) And the same record which the ALJ relies upon to find that Plaintiff did not have sleep problems or low energy indicates that Plaintiff does have anxiety.[2] (AR 487-89.) The ALJ cannot "manufacture[] a conflict by identifying two

---

[2] While the word anxiety appears to have been cut-off from the attached print-out, from a review of the other medical records it is apparent that the three psychology questions on each check-box form are depression, anxiety, and sleep disturbances. (*Compare* AR 471 *with* AR 489.) The record at issue reflects Plaintiff's answers with respect to "depression" and "sleep disturbances."

6

or three reports of improvement" in Plaintiff's condition and ignore any countervailing evidence. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

In sum, no evidence—let alone substantial evidence—supports the ALJ's arbitrary decision that Plaintiff's disability onset date was not his birth as he indicated, or the age of 12 when he first began seeing his treating psychologist for "severe emotional difficulties," or any date prior to 2013 when he applied for supplemental security income, but was instead, sometime after 2010—a date which was only meaningful because it prohibited Plaintiff from being eligible for disabled adult child benefits.

**B.     Remand**

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, id., and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12-cv-6179-YGR, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595*); Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r*

---

The field for the query to which Plaintiff responded "yes" would therefore be "anxiety."

7

*of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

Such rare circumstances exist here. As to the first prong, the record is fully developed. The ALJ relied on the same evidence to find that Plaintiff was disabled as of 2013, to find that he was not disabled as of 2010. The second and third prongs of the credit-as-true standard are also satisfied. The ALJ failed to provide legally sufficient reasons his non-disability decision. This evidence, if taken as true, demonstrates that Plaintiff has been disabled at least since the age of 11, and thus is entitled to both disabled adult child benefits and supplemental security benefits. *See Garrison*, 759 F.3d at, 1022 n.28; *Brown-Hunter*, 806 F.3d at 495 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."). The Commissioner insists that remand for an award of benefits is improper because the "there is no question that Plaintiff's childhood disability improved over time." (Dkt. No. 25: at 8:18.) The Commissioner offers no evidentiary support for this statement—because there is none. Indeed, the ALJ offered no explanation for his decision that although Plaintiff was disabled as a child, he was not disabled shortly before his 22nd birthday, but was disabled again after his 24th birthday. Nor does the record reflect any such evidence. "[T]he credit-as-true rule foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a useful purpose under the first part of credit-as-true analysis." *See Garrison*, 759 F.3d at 1021 (citing *Benecke*, 379 F.3d at 595) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") In sum, there is no serious doubt based on the Court's evaluation of the record as a whole that Plaintiff was and is disabled within the meaning of the Social Security Act.

The Court is particularly disheartened by the arbitrariness of the ALJ's decision here and the absence of any subsequent exercise of discretion upon review by either the Appeals Council or the Agency to acknowledge that there is no basis for the ALJ's decision—despite the vigorous efforts of Plaintiff's counsel. As a result, two and a half years have passed since the ALJ's

decision during which time Plaintiff has been denied benefits to which he would otherwise be entitled.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 18) and DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. No. 25). The Court VACATES the ALJ's final decision and REMANDS for an award of disabled adult child benefits.

**IT IS SO ORDERED.**

Dated: February 6, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge